UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROLAND GRAHAM,

                           Petitioner,

              -v-

DIRECTOR THOMAS DECKER, *in his official capacity as Director of the New York Field Office of U.S. Immigrations & Customs Enforcement*; ACTING SECRETARY CHAD WOLF, *in his official capacity as Acting Secretary, U.S. Department of Homeland Security*; and ATTORNEY GENERAL WILLIAM BARR, *in his official capacity as Attorney General of the United States*,

                        Respondents.

20 Civ. 3168 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Petitioner Roland Graham filed this Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, asking the Court to order respondents Director of the New York Field Office of U.S. Immigration and Customs Enforcement ("ICE") Thomas Decker, Acting Secretary of the Department of Homeland Security Chad Wolf, and Attorney General William Barr (the "Government") to, within seven days, release him from detention on his own recognizance or hold a bond hearing.  Graham is a lawful permanent resident who has been detained since August 13, 2019, awaiting removal proceedings.  For the reasons that follow, the Court grants the Petition and orders the Government to hold a bond hearing within seven days.  If no bond hearing is held in that time, the Government is ordered to release Graham on his own recognizance.

## I.     Background

### A.     Factual Background

#### 1.     Graham's Background

On June 8, 1993, Graham, a native and citizen of Jamaica, arrived in the United States as a legal permanent resident.  Dkt. 8 ("Aniyikaiye Decl.") ¶ 4.  He has lived in the United States ever since.  *See* Dkt. 1 ("Pet.") ¶ 1.  Almost all of Graham's family resides in the United States, including his four children and his grandchild; his partner is also a United States citizen and lives here.  *Id.* ¶ 19.

On June 6, 1995, Graham was arrested on charges of criminal possession and sale of marijuana and criminal possession of a weapon; he pled guilty to criminal possession of marijuana and was sentenced to one-year probation.  Aniyikaiye Decl. ¶ 5.  On June 3, 1997, Graham was again arrested for criminal sale of marijuana and unlawful possession of marijuana.  *Id.* ¶ 6.  He pled guilty to criminal sale of marijuana and was sentenced to 120 days' imprisonment.  *Id.*  One year later, on June 6, 1998, Graham was arrested for criminal contempt; he later pled guilty and was again sentenced to 120 days' imprisonment.  *Id.* ¶ 7.  On July 7, 1999, Graham was arrested for a second time on criminal contempt charges, pled guilty, and was sentenced to one-year conditional discharge.  *Id.* ¶ 8.  He was not arrested again until December 27, 2017, when he was charged with criminal possession of marijuana in the second degree.  *Id.* ¶ 9.  On June 14, 2018, he pled guilty to that charge and was sentenced to five years' probation.  *Id.*

#### 2.     Graham's Immigration Proceedings

On August 13, 2019, ICE arrested Graham for the purpose of conducting removal proceedings.  *Id.* ¶ 10.  ICE served him with a Notice to Appear ("NTA"), which alleged that he was removable based on two provisions of the Immigration and Nationality Act ("INA"):  ICE

alleged that Graham had violated a law relating to a controlled substance other than one offense for possession of marijuana for his own use, *see* 8 U.S.C. § 1227(a)(2)(B)(i), and had been enjoined under a protection order and determined to have engaged in conduct that involved threats of violence, repeated harassment, or bodily harm to the person for whom the protection order was issued, *see id.* § 1227(a)(2)(E)(ii).  Aniyikaiye Decl. ¶ 10.  Because of Graham's marijuana-related convictions, his detention is mandatory under 8 U.S.C. § 1226(c).  *Id.*

On August 16, 2019, Graham first appeared before an immigration judge, without counsel, and asked for an adjournment to allow him time to find counsel.  *Id.* ¶ 11.  The judge granted that request, adjourning the conference until August 30, 2019.  *Id.*  On August 30, 2019, Graham and his newly found counsel appeared, and his counsel requested an adjournment to prepare the case.  *Id.* ¶ 12.  The requested adjournment request was again granted.  *Id.*  On September 12, 2019, the date of the next conference, the judge adjourned the conference a third time because ICE had failed to serve evidence in support of the NTA.  *Id.* ¶ 13.  On September 26, 2019, at a fourth conference, the immigration judge reviewed evidence in Graham's case and determined that he was removable because of his controlled substance offense but declined to make a finding as to the protection-order offense.  *Id.* ¶ 14.  After the ruling, Graham's counsel requested an adjournment to apply for relief from removal, which the judge granted.  *Id.*  Graham applied for relief for asylum and protection under the Convention Against Torture, because Graham is bisexual and alleged that he has been subjected to severe sexual abuse— including rape by an alleged police officer—in Jamaica.  Pet. ¶ 20.  Graham represents that this abuse has caused Graham to suffer from post-traumatic stress disorder ("PTSD") and a variety of other physical ailments.  *Id.* ¶ 21.

On October 10, 2019, the fifth conference was held, during which the immigration judge proposed several dates for a merits hearing on Graham's application of relief—one of which was rejected by Graham's counsel—and scheduled the hearing for November 4, 2019. Aniyikaiye Decl. ¶ 15. On November 4, 2019, Graham's counsel requested an adjournment because he had not been able to communicate with Graham due to technological issues at the Orange County Jail, where Graham was detained, and because an expert Graham hoped would testify was not available. *Id.* ¶ 16; Pet. ¶ 22. The judge adjourned the conference until November 14, 2019. Aniyikaiye Decl. ¶ 16. No hearing was held on November 14, 2019, because there was not an immigration judge available. *See* Pet. ¶ 23. On or about November 15, 2019, Graham's counsel served ICE with a letter, which stated that the court had informed him that the November 14, 2019 hearing was adjourned; Graham's counsel thus proposed several dates for the hearing. Aniyikaiye Decl. ¶ 17. On or about November 22, 2019, Graham's counsel served ICE with a motion to advance the hearing. *Id.* ¶ 18. An immigration judge granted that motion and scheduled the merits hearing for December 17, 2019. *Id.* On December 17, 2019, Graham appeared by video for the hearing. *Id.* ¶ 19. The immigration judge adjourned the hearing because Graham needed to appear in person. *Id.* On January 15, 2020, Graham appeared in person, and the court heard testimony from Graham but no other witnesses. *Id.* ¶ 20. The court continued the hearing to February 6, 2020, in order to allow Graham's partner to testify in support of him. *Id.*; Pet. ¶ 24. On February 6, 2020, Graham's partner testified, but the court did not allow Graham's proposed expert on Jamaican country conditions to testify. Aniyikaiye Decl. ¶ 21; Pet. ¶ 24.

On February 20, 2020, the immigration judge denied Graham's application for relief and ordered him to be removed from the United States. Aniyikaiye Decl. ¶ 22. On March 3, 2020,

Graham's counsel filed a motion to reconsider, arguing, *inter alia*, that the immigration court should reconsider its decision not to allow Graham's expert to testify.  *Id.* ¶ 23; Pet. ¶ 25; *see also* Pet. ¶ 25 (explaining that counsel resubmitted the motion to reconsider on March 17, 2020, because, despite being properly filed, the motion had not been added to immigration court's file). The immigration judge has not ruled on that motion.  *See* Pet. ¶ 26.

On March 20, 2020, Graham filed an appeal with the Board of Immigration Appeals ("BIA"), which is still pending.  Aniyikaiye Decl. ¶ 24; Pet. ¶ 27.  In that appeal, Graham argues that the immigration judge erred in, *inter alia*, excluding his expert testimony and ruling that he could avoid persecution in Jamaica due to his bisexuality because he had remained largely closeted in the United States.  Pet. ¶ 26.

### 3.    Prior Habeas Petition

On March 19, 2020, Graham filed a petition for writ of habeas corpus—followed shortly by a motion for a temporary restraining order ("TRO")—seeking his immediate release from detention due to COVID-19 concerns.  Aniyikaiye Decl. ¶ 25; *see* No. 20 Civ. 2423 (PKC), Dkts. 1, 5.  On April 13, 2020, the Hon. P. Kevin Castel denied Graham's application for a TRO because Graham had not submitted evidence demonstrating that he was at a heightened risk for COVID-19 and had not demonstrated that the Government had shown a deliberate indifference to his serious medical needs.  Aniyikaiye Decl. ¶ 26; *see* No. 20 Civ. 2423 (PKC), Dkt. 24.  That petition remains pending before Judge Castel.

### B.    Procedural History

On April 22, 2020, Graham filed this Petition for a writ of habeas corpus in this Court. *See* Pet.  On April 30, 2020, the Government filed its memorandum of law in opposition to Graham's Petition, Dkt. 7 ("Gov. Mem."), its return, Dkt. 6, and the declaration of Deportation

Officer Dare Aniyikaiye, Aniyikaiye Decl.  On May 4, 2020, Graham filed his reply.  Dkt. 11 ("Pet. Reply").

On June 15, 2020, Graham filed a letter update, noting that Graham had been detained for 10 months without a bond hearing, the BIA had not yet set a briefing schedule for his appeal, and that ICE had recently denied his request for humanitarian parole or release pursuant to a nationwide injunction in *Fraihat v. U.S. Immigration & Customs Enf't*, --- F. Supp. 3d ---, No. ED Civ. 19-1546 (JGB), 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020).  Dkt. 13 at 1. Graham further represented that at least eight staff members at the Orange County Jail, where Graham is detained, have tested positive for COVID-19, and that the facility is now accepting new ICE detainees, thus increasing the COVID-19 risk.  *Id.*  Later that day, the Government responded, explaining, *inter alia*, that those eight staff members did not interact with any detainees and had recovered and been in quarantine for at least 14 days before returning to work and that Orange County Jail had protocol in place for the intake of new detainees.  Dkt. 14 at 1–2.

## II.   Discussion

The Petition argues that Graham should be given a bond hearing or released because the length of his detention without such a hearing—which stood at eight months at the time of the filing of the Petition and has now reached 10 months—violates the due process clause.  The Petition contends both that the detention of any individual pursuant to 8 U.S.C. § 1226(c) for more than six months violates the due process clause, and that Graham's detention in particular does so.

The Court has jurisdiction to review the Petition because it presents a federal question and is brought under § 2241, which allows "a district court to grant a writ of habeas corpus whenever a petitioner is in custody in violation of the Constitution or laws or treaties of the

6

United States."  *See Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *4

(S.D.N.Y. Nov. 21, 2018) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003)).  "This

jurisdiction extends to claims by noncitizens like [Graham] who challenge the

constitutionality . . . of their detention," as long as the challenge "do[es] not relate to the ultimate

question of removability or to unreviewable discretionary determinations."  *Id.*

       In response to the Petition, the Government argues that the Petition should be dismissed

for two reasons: (1) for abuse of the writ, because Graham could have brought these claims in his

prior petition before Judge Castel; and (2) on the merits, because his detention does not violate

the due process clause.  The Court addresses these arguments in turn.

     **A.**    **Abuse of the Writ**

       The Government argues that the Petition should be dismissed for abuse of the writ.  *See*

Gov. Mem. at 10–11.  It argues that Graham could have brought the Petition's due process

claims in his prior petition before Judge Castel, which sought release based on COVID-19.  *See*

*id.* at 10.

       Res judicata does not apply in the context of habeas petitions; instead, the "abuse of the

writ" doctrine serves as "a substitute for res judicata" for subsequent habeas petitions.  *Muniz v.*

*United States*, 236 F.3d 122, 126 (2d Cir. 2001) (citation omitted); *see McCleskey v. Zant*,

499 U.S. 467, 479–81 (1991).  The doctrine "defines the circumstances in which federal courts

decline to entertain a claim presented for the first time in a second or subsequent petition for a

writ of habeas corpus."  *McCleskey*, 499 U.S. at 470.  Under the doctrine, "a court need not

entertain a petition that abuses the habeas process," including those in which "the petitioner

could have asserted his present claims in a prior petition," *Esposito v. Ashcroft*, 392 F.3d 549,

550 (2d Cir. 2004) (per curiam), or those that raise the same claims as the previous petition,

*Garcia v. Dep't of Homeland Sec.*, 422 F. App'x 7, 7 (2d Cir. 2011).  The abuse of the writ

doctrine, like habeas corpus relief, is governed by "equitable principles." *McCleskey*, 499 U.S. at 484; *see also Esposito*, 392 F.3d at 550; *Villanueva v. United States*, 346 F.3d 55, 61 (2d Cir. 2003).

The Court does not find good reason to apply the abuse of the writ doctrine here. Setting aside the unresolved question of the extent to which the doctrine applies to habeas challenges involving immigration detention under § 1226(c), *see Sankara v. Barr*, No. 19 Civ. 174 (LJV), 2019 WL 1922069, at *3 (W.D.N.Y. Apr. 30, 2019), its application is not warranted on the facts. Graham's petitions addressed separate grievances: The first was substantive. It sought Graham's release due to the threat to his health and safety presented by the rapidly encroaching COVID-19 pandemic. The second is procedural. It makes a due process claim based on the lack of a bond hearing. As such, although each was aimed at securing Graham's release, they implicated different facts and doctrines. And while Graham could have raised a procedural due process challenge in his first petition, the urgency of raising the COVID-19 claim understandably took precedence in mid-March. Further, Graham's due process claim was necessarily less strong at that point than it was later, when he filed this action; the nature of such a claim is that it gains strength the longer the non-citizen remains in custody without a bond hearing. *See Sajous v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (the "most important" factor in petitioner's procedural due process challenge to immigration detention under § 1226(c) is the length of detention). The Court accordingly declines to bar this petition based on the abuse of the writ doctrine.

### B.    Graham's Due Process Claim

The Petition claims that the Government's extended detention of Graham under § 1226(c) without a bond hearing violates due process. *See* Pet. ¶¶ 50–56. Graham is subject to mandatory detention under § 1226(c) based on his three marijuana-related convictions, the longest sentence

8

arising from which was 120 days in prison.  The Petition argues (1) that any detention under
§ 1226(c) that exceeds six months without a bond hearing is unconstitutional and alternatively
(2) that the facts of Graham's case make unconstitutional his 10-month-long detention without
such a hearing.

The background legal framework to claims along these lines, which have been widely
litigated during the past approximately decade-and-a-half, is by now familiar.  Non-citizens
"who are arrested because they are believed to be deportable may generally apply for release on
bond . . . while the question of their removal is being decided." *Nielsen v. Preap*, 139 S. Ct. 954,
958 (2019); *see also Guerrero v. Decker*, No. 19 Civ. 8092 (RA), 2019 WL 5683372, at *3
(S.D.N.Y. Nov. 1, 2019).  However, § 1226(c), which applies to non-citizens "who have
committed certain dangerous crimes," provides an exception to this general rule:  Such persons
"must be detained without a bond hearing until the question of their removal is resolved."
*Preap*, 139 S. Ct. at 959.  In 2003, the Supreme Court upheld § 1226(c)'s mandatory detention
provision as facially constitutional.  *See Demore v. Kim*, 538 U.S. 510, 531 (2003).  But the
Court left open the possibility that detention without a bond hearing in a particular case could be
so long as to violate the due process clause.  *See id.* at 513 (detention for "*brief* period necessary
for . . . removal proceedings" constitutional (emphasis added)).  Justice Kennedy underscored the
point in his concurrence in *Demore*:

> [S]ince the Due Process clause prohibits arbitrary deprivations of liberty, a lawful
> permanent resident alien such as respondent could be entitled to an individualized
> determination as to his risk of flight and dangerousness if the continued detention
> became unreasonable or unjustified . . . .  Were there to be an unreasonable delay
> by the INS in pursuing and completing deportation proceedings, it could become
> necessary then to inquire whether the detention is not to facilitate deportation, or to
> protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Id.* at 532–33 (Kennedy, J., concurring) (internal citations omitted).

9

Following *Demore*, many courts, including in this District, held that detentions over six months were *per se* unconstitutional. *See Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *5 (S.D.N.Y. July 25, 2018) (collecting cases). Tracking these decisions, the Second Circuit in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), employing the canon of constitutional avoidance, held that persons detained under § 1226(c) must receive a bond hearing within six months. *See id.* at 616. Three years later, however, the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), rejected this view in a case arising from the Ninth Circuit. It reasoned that the statutory ambiguity necessary to justify application of the constitutional avoidance canon did not exist with respect to § 1226(c). *See id.* at 836, 842, 846; *see also id.* at 846 ("[Section] 1226(c) does not on its face limit the length of the detention it authorizes."); *id.* at 851 ("[N]othing in any of the relevant provisions imposes a 6-month time limit on detention without the possibility of bail." (emphasis omitted)); *see also Vallejo v. Decker*, No. 18 Civ. 5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018)). The Supreme Court accordingly vacated *Lora* "for further consideration in light of *Jennings*[.]" *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

*Jennings*, however, did not evaluate the constitutionality of extended detention without a bail hearing. *Jennings*, 138 S. Ct. at 851; *see also Guerrero*, 2019 WL 5683372, at *4; *Vallejo*, 2018 WL 3738947, at *3. And *Lora* remains "strong persuasive authority" in this Circuit. *Sajous*, 2018 WL 2357266, at *7. As such, as numerous courts have recognized, it is clear that "at some point, detention without a hearing offends the Due Process Clause." *Arce-Ipanaque v. Decker*, No. 19 Civ. 1076 (JMF), 2019 WL 2136727, at *1 (S.D.N.Y. May 15, 2019) (quoting *Vallejo*, 2018 WL 3738947, at *3); *see also Brissett v. Decker*, 324 F. Supp. 3d 444, 451 (S.D.N.Y. 2018) ("[A]liens are entitled to individualized determinations as to their risk of flight

and dangerousness when their continued detention becomes unreasonable and unjustified." (collecting cases)).

To determine when detention violates due process, courts in this District, since *Jennings*, have "overwhelmingly adopted" an analysis that considers multiple relevant factors. *Arce-Ipanaque*, 2019 WL 2136727, at *1 (quoting *Gomes Herbert v. Decker*, No. 19 Civ. 760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019)).  Relevant factors generally include: "(1) the length of time the noncitizen has already been detained; (2) whether the noncitizen is responsible for the delay; (3) whether the noncitizen has asserted defenses to removal; (4) whether the noncitizen's civil immigration detention exceeds the time the noncitizen spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Arce-Ipanaque*, 2019 WL 2136727, at *1; *accord Sajous*, 2018 WL 2357266, at *10–11.  Courts, at times, have also considered (6) "whether the continued duration of the detention is finite or near conclusion" and (7) "the interests served by continued detention." *Arce-Ipanaque*, 2019 WL 2136727, at *1 (quoting *Vallejo*, 2018 WL 3738947, at *3).  All factors need not weigh in a petitioner's favor in order to warrant a grant of habeas relief.  *See Gomes Herbert*, 2019 WL 1434272, at *4 (granting relief where one factor favored respondents); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261–62 (S.D.N.Y. 2018) (same).

This Court similarly finds a multi-factor analysis more apt for the due process inquiry than a bright-line test setting a fixed deadline (*e.g.*, six months).  Applying that approach, the Court finds that Graham's detention without a bond hearing for 10 months violates the due process clause.

The first factor, concerning the length of time Graham has been detained, is the "most important." *Sajous*, 2018 WL 2357266, at *10. Graham's detention began on August 13, 2019, when ICE first detained him under § 1226(c). *See* Pet. ¶ 2. When Graham initially filed the Petition, he had been detained for more than eight months. *Id.* ¶ 3. That detention has now exceeded 10 months.

As a rule of thumb, courts applying the multi-factor analysis have regarded detentions exceeding six months without a bond hearing as favoring the finding of a due process violation. The Government argues, however, that a detention exceeding such length should not reflexively be treated as determinative. Gov. Mem. at 18–19. Be that as it may, a detention exceeding six months fairly favors the claimant in a multi-factor analysis. "[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Gomes Herbert*, 2019 WL 1434272, at *2 (quoting *Sajous*, 2018 WL 2357266, at *10 (collecting cases)); *see also Hernandez*, 2018 WL 3569108, at *6 (citing with approval Third Circuit's holding that detention for nine months "strain[s] any common-sense definition of a limited or brief civil detention" (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 477 (3d Cir. 2015)). Here, Graham's detention has exceeded that boundary by more than four months. Courts in this District have commonly granted the relief sought—a court-ordered bond hearing—to petitioners who have been detained without one for periods less than or matching Graham's. *See, e.g.*, *Cabral*, 331 F. Supp. 3d at 261 (seven months); *Gomes Herbert*, 2019 WL 143272, at *2 (eight months); *Sajous*, 2018 WL 2357266, at *11 (eight months); *Hernandez*, 2018 WL 3569108, at *8 (nine months); *Dukuray v. Decker*, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (10 months). This factor strongly favors Graham's claim.

The second factor, responsibility for delay, weighs in the Government's favor—to a

point.  That is because Graham requested several adjournments, including to find counsel, for his

counsel to prepare, and to allow his witnesses to be present to testify at his merits hearing.  *See*

Aniyikaiye Decl. ¶¶ 11–12, 20.  However, although Graham also requested time to apply for

relief from removal, moved for reconsideration of the immigration judge's decision upholding

removal, and filed an appeal with the BIA, *see id.* ¶¶ 14, 23–24, these actions do not harm his

present bid, because "pursuit of relief from removal does not, in itself, undermine a claim that

detention is unreasonably prolonged," *Brissett*, 324 F. Supp. 3d at 453 (citation omitted); *see*

*also Yusuf v. Edwards*, No. 18 Civ. 3605 (GBD) (BCM), 2019 WL 4198798, at *8

(S.D.N.Y. July 2, 2019) (second factor neutral where petitioner appealed immigration judge's

decision).[1]

And some of the delay is affirmatively attributable to ICE or the immigration court.  *See*

*Sajous*, 2018 WL 2357266, at *11 (prolonged detention "is unreasonable whether the failure was

caused by ICE officials, an immigration judge, an administrative clerk, or another agency").  For

example, here the immigration court granted adjournments because ICE had failed to serve

evidence, no immigration judge was available for a merits hearing, and ICE failed to produce

Graham in person for that hearing.  *See* Aniyikaiye Decl. ¶¶ 13, 19; Pet. ¶ 23.  And although

Graham did wait approximately a month to file his appeal with the BIA, Graham represents—

and the Government does not dispute—that this delay was because the immigration judge had

---

[1] In attempting to fault Graham for the delay, the Government relies on *Doherty v. Thornburgh*, 943 F.2d 204 (2d Cir. 1991).  Gov. Mem. at 20.  But, as courts in this District have recognized, *Doherty* is inapposite, because the extended detention there was held "a proper exercise of discretion" on account of the fact that the petitioner had already received a bond hearing and had been denied bail because he was "deemed 'an exceptionally poor bail risk.'"  *Hernandez*, 2018 WL 3579108, at *9 (quoting *Doherty*, 943 F.3d at 211).

not resolved his motion to reconsider, which had been misplaced by court staff. *See* Pet. ¶ 25; Pet. Reply at 9 n.3.

On balance, although Graham did request continuances, the majority of the delay cannot be attributed to him, and the Government at all times was at liberty to schedule a bond hearing notwithstanding the delays caused by whomever. This factor, while assisting the Government's cause to a degree, thus is far from determinative. *Cf. Dukuray*, 2018 WL 5292130, at *4 (factor weighed in favor of petitioner where petitioner had requested a one-month continuance and immigration judge had twice rescheduled his merits hearing).

The third factor weighs slightly in Graham's favor, because he has asserted defenses to his removal. Graham asserted the defenses of asylum and protection under the Convention Against Torture based on persecution he could suffer in Jamaica on account of his bisexuality. *See, e.g.*, *Cabral*, 331 F. Supp. 3d at 262 (factor weighed in favor of petitioner where he had asserted asylum and Convention Against Torture defenses). Although Graham's case differs from those in which the immigration judge had yet to resolve petitioner's application for relief from removal, *see, e.g.*, *Dukuray*, 2018 WL 5292130, at *4; *Cabral*, 331 F. Supp. 3d at 261–62, that judge's initial denial of his application is not determinative. Graham also advances arguments that the immigration judge erred in excluding his expert from testifying as to the conditions for LGBTQ individuals in Jamaica and in ruling that he could avoid persecution in

Jamaica by continuing to be closeted.  If credited, these arguments could result in his defenses prevailing.[2]  *See* Pet. ¶ 26; *see also* Pet. Reply at 11–12.

Notably, the Government does not allege that Graham has "acted in bad faith or used delay tactics" in pursuing these defenses.  *Arce-Ipanaque*, 2019 WL 2136727, at *2 (citation omitted).  Nor does it claim that these defenses are "frivolous or meritless."  *Id.*; *see also, e.g.*, *Dukuray*, 2018 WL 5292130, at *4 ("[R]espondents have not asserted that petitioner's defenses are frivolous."); *Brissett*, 324 F. Supp. 3d at 453 ("While the Court does not (and need not) express an opinion as to the merits of Petitioner's defenses, the Court notes that there is no contention that they are frivolous ones."); *Hernandez*, 2018 WL 3579108, at *9 (faulting Government for failing to "distinguish between bona fide and frivolous arguments"); *Sajous*, 2018 WL 2357266, at *11 ("[T]he Government has not argued—either in immigration proceedings or before this Court—that the defenses raised by Sajous are frivolous.").  The Court "decline[s] to 'inquire into the strength of [Graham's] defenses' because 'it is sufficient to note their existence and the resulting possibility that [Graham] will ultimately not be removed[.]'" *Arce-Ipanaque*, 2019 WL 2136727, at *2 (quoting *Gomes Herbert*, 2019 WL 1434272, at *3); *accord Sajous*, 2018 WL 2357266, at *11.  The Court thus finds that this factor weighs in Graham's favor.

---

[2] As to this factor, the Government relies on *Nikolic v. Decker*, No. 19 Civ. 6047 (LTS), 2019 WL 5887500 (S.D.N.Y. Nov. 12, 2019), which discounted the petitioner's defenses to removal on the grounds that these had been rejected by the immigration judge and that the petitioner would "presumably be removed from the United States eventually." *Id.* at *5 (citation omitted).  Here, in contrast, Graham continues to pursue his defenses on appeal and this Court cannot project with certainty that his appeal will fail. *Cf. Yusuf*, 2019 WL 4198798, at *2, 8 (finding third factor weighed in petitioner's favor where he asserted Fifth Amendment defenses, independent of his request for discretionary relief, after immigration judge had ordered him removed and that decision was affirmed by the BIA).

The fourth factor weighs heavily in Graham's favor.  The crimes that rendered Graham removable are his marijuana convictions.  The longest sentence he received for these crimes was 120 days, or four months, in custody.  Graham's current detention lasted more than twice as long as that sentence.  *See Yusuf*, 2019 WL 4198798, *8 (fourth factor weighed "strongly" in petitioner's favor where his immigration detention had lasted twice as long as his criminal sentence).

The fifth factor also favors Graham, because he is being detained in Orange County Jail—a local criminal jail, not a civil detention facility.  *See Arce-Ipanaque*, 2019 WL 2136727, at *2 (petitioner detained at Orange County Jail and Bergen County Jail); *see also, e.g.*, *Dukuray*, 2018 WL 5292130, at *5 (for petitioner detained at county jail, there was "no difference between the facility where petitioner is housed and a penal institution").  Graham also plausibly asserts that the conditions in that facility risk his exposure to the COVID-19 pandemic.  *See* Pet. ¶¶ 33–36.

As to the sixth factor, it is not clear how close the conclusion of Graham's detention is.  That point is closer than in cases where an initial determination as to removability has yet to be made, *see, e.g.*, *Cabral*, 331 F. Supp. 3d at 258, 262, but Graham has ahead of him potentially "lengthy appeal[s]" before the BIA and the Second Circuit, *see Arce-Ipanaque*, 2019 WL 2136727, at *2; *see also Dukuray*, 2018 WL 5292130, at *5 (noting that petitioner would remain in detention during appeal).  This factor likely weighs in Graham's favor.  It is, at minimum, neutral.

The seventh factor, the interests served by continued detention, weighs, too, in Graham's favor.  His request is procedural: for a bond hearing, at which he could attempt to show that his

continued detention is unwarranted.  *See* Pet. ¶ 4.[3]  "At bottom, the 'minimal burden' that a bond hearing would place on the Government is far outweighed by [Graham's] interest in 'ensur[ing] that his continued detention is justified.'"  *Arce-Ipanaque*, 2019 WL 2136727, at *2 (quoting *Vallejo*, 2018 WL 3738947, at *5); *see also, e.g.*, *Yusuf*, 2019 WL 4198798, at *9 (regardless whether petitioner was a flight risk or presented a danger to the community, he was entitled to an individualized bond hearing).  Enabling Graham to articulate his arguments[4] at a bond hearing works no consequential injury on the Government.

On balance, the Court finds that the above factors tip decisively in Graham's favor.  The Court finds, therefore, that Graham is entitled to a bond hearing as a matter of due process.  The Court grants Graham's Petition and orders the Government to hold a bond hearing within seven days from the date of this order.

Two procedural issues remain:  Graham asks that (1) the Government, at the bond hearing, be required to establish by clear and convincing evidence that he poses a risk of flight or danger to the community, and (2) the adjudicator consider alternatives to imprisonment and Graham's ability to pay bond.  *See* Pet. at pp. 16–17.  The Government opposes these requests. *See* Gov. Mem. at 22–25.  Graham is correct on both points.

"The 'overwhelming majority' of courts have concluded, post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at

---

[3] His request for release on his own recognizance is but an alternative form of relief—if no bond hearing is held within seven days.  *See* Pet. ¶ 4.

[4] As foreshadowed by Graham, these include that Graham has lived here for much of his adult life; that almost his entire family, including his children and his partner, reside in the United States; and that his convictions with immigration consequences were for non-violent marijuana offenses.  *See Hernandez*, 2018 WL 3579108, at *10 (noting similar circumstances made the Government's interests in continued detention without a bond hearing "appear slight").

a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests." *Joseph*, 2018 WL 6075067, at *12 (collecting cases).  Further, courts in this District have also consistently found that the adjudicator "must 'consider ability to pay and alternative conditions of release in setting bond.'" *Gomes Herbert*, 2019 WL 1434272, at *4 (quoting *Hernandez*, 2018 WL 3579108, at *12); *see also, e.g.*, *Arce-Ipanaque*, 2019 WL 2136727, at *3 (same).  This Court follows suit and holds that, because the duration of Graham's detention is unreasonable, the Government must prove by clear and convincing evidence that he is a risk of flight or danger to the community, or release him on bond.  In assessing this issue, the immigration judge should also consider Graham's ability to pay and the availability of alternative means of assuring his appearance.

## CONCLUSION

For the foregoing reasons, the Court grants Graham's Petition.  The Government is ordered to hold a bond hearing within seven days, or to release Graham on his own recognizance. The Clerk of Court is respectfully directed to close the motion pending at docket one and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: June 18, 2020
       New York, New York